# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

SABRINA D. HICKMAN,

    Plaintiff,

v.

    Civil Action 2:20-cv-4049
    Chief Judge Algenon L. Marbley
    Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Sabrina Hickman, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 16), and the administrative record (ECF No. 12). For the reasons that follow, the undersigned **RECOMMENDEDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's determination.

## I.    BACKGROUND

Plaintiff protectively filed her application for benefits on July 7, 2016, alleging that she became disabled on January 8, 2015. (R. 271–77.) Plaintiff's application was denied initially in November 2016, and upon reconsideration in January 2017. (R. 106–19, 120–39). A video hearing was held on August 13, 2019,[1] before Administrative Law Judge Jeannine Lesperance

---

[1] An initial video hearing was held on January 10, 2019, but a video equipment failure resulting in audio problems required the hearing to be postponed. (R. 10, 101–05.)

(the "ALJ"), who issued an unfavorable determination on August 30, 2019. (R. 10–36.) The Appeals Council declined to review the determination, and it became final. (R. 1–6.)

Plaintiff seeks judicial review of the ALJ's unfavorable determination. Plaintiff asserts that the ALJ failed to provide good reasons for declining to assign controlling weight to the opinion of her treating physician, Brian Fahey, D.O. (Pl's Statement of Errors 7, ECF No. 15.) The undersigned disagrees.

## II. THE ALJ's DECISION

The ALJ issued her decision on August 30, 2019, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 10–36.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 8, 2015, the alleged onset date. (*Id.* at 12.) At step two, the ALJ found that

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R.§§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Plaintiff had the following severe impairments: pseudotumor cerebri, occipital neuralgia, degenerative disc disease of the cervical spine, degenerative joint disease of the right shoulder, degenerative joint disease of the left knee, carpal tunnel syndrome of the right hand, adjustment disorder with depressed mood, and anxiety disorder. (*Id.*)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14.)

> The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:
>
> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she could occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl; frequently handle with the right upper extremity; occasionally reach overhead; never climb ladders, ropes, or scaffolds; never work around hazards such as unprotected heights or work in proximity to exposed moving mechanical parts; and never engage in occupational driving. Mentally, she could perform simple, routine tasks at an average pace without strict time or production demands; interact occasionally with others on matters limited to the straightforward exchange of information, without negotiation, persuasion, or conflict resolution; and adapt to occasional changes in duties.

(R. 18.)

At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work as a secretary or an EMT. (R. 34.)  But at step five, relying on testimony from a Vocational Expert ("VE"), the ALJ determined that in light of Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that Plaintiff could still perform. (R. 35.)  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (R. 36.)

---

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 4040.1545(a)(1).

3

### III.    RELEVANT RECORD EVIDENCE

The condition central to Plaintiff's disability application is her severe headaches. Her sole contention of error is that the ALJ improperly failed to give controlling weight to the opinion of the physician who was treating her headaches and their causes, Dr. Fahey. The following summarizes the record evidence most relevant to this contention.

#### A. Headache Onset and History

Plaintiff first started experiencing headaches in January 2015. (*See* R. 412, 507.) In February 2015, Plaintiff went to the emergency room with complaints of headache pain. (R. 506–07.) She was diagnosed with tension headaches and temporomandibular joint pain arthralgia. (*Id*. at 516.) She presented at the emergency room again in April 2015 with a complaints of a headache, neck pain, and chest pain. (R. 533.) A few days later, Plaintiff saw Dr. L.S. Sole, a neurologist, who diagnosed her with headaches, migraines, and hypothyroidism, and prescribed her medication. (*Id.* 418–24.) A few days after that, Plaintiff saw Dr. Carl Minning, who diagnosed her with anisocoria and headaches. (*Id.* 412–14.) In June 2015, Plaintiff went to the emergency room again complaining of a "massive" headache, and she was admitted to the hospital for two days. (*Id.* 439–40, 457.) During this time, she reported having headaches almost daily, of different types and with a range of symptoms. (*See, e.g.*, R. 486, 490.) She periodically experienced relief from medications and other treatment, but not always. (*See, e.g.*, R. 451, 454–55, 606.)

#### B. Treatment and Opinion of Dr. Brian Fahey, D.O.

In August 2015, Plaintiff first began physical therapy to address her headaches with Dr. Brian Fahey. (*See* R. 611.) After nine physical therapy visits, Dr. Fahey discharged Plaintiff from that treatment because it was not effective and turned instead to other treatment methods to

4

address the headaches. (*Id.* at 625.) In 2017, Dr. Fahey diagnosed Plaintiff with chronic headaches and pseudotumor cerebri and continued to treat her with medication rather than physical therapy. (*Id.* at 667.) In late 2017 and early 2018, Dr. Fahey noted that Plaintiff experienced some success in controlling the headaches through these treatments. (*See, e.g.*, R. 916, 935, 946.) Later in 2018, the headaches worsened again, then improved after trying occipital nerve injections. (*See* 608–12, 916, 935.)

In September 2018, Dr. Fahey issued a neurologist specialist statement explaining his treatment history with Plaintiff. (R. 914–15.) He explained that he had been seeing her about quarterly for a three-year period and that her headaches had the following attributes: they occurred about once weekly and lasted for about 24 hours; they were triggered by and exacerbated by activity; they could be soothed by lying down in the dark and treated with medication; and they could potentially cause Plaintiff to be off task more than a quarter of a day, and to miss more than four days of work in a month. (*Id.* at 915, 965–66.)

**C. Opinion of Dr. Steven Goldstein, M.D.**

At Plaintiff's hearing, neurologist Dr. Steven Goldstein appeared as a medical expert. The ALJ questioned him about the impact of Plaintiff's headaches on her ability to work. Dr. Goldstein explained that the disruption caused by Plaintiff's headaches would vary depending on their severity. (*Id.* 78.) Relying upon his review of Plaintiff's medical records and discussing Plaintiff's complaints, diagnoses, treatment history, response to treatment, and objective testing results Dr. Goldstein opined that the headaches would not make it so that Plaintiff was unable to concentrate to work. (*Id.* 79–81.)

### D. Plaintiff's Statements and Record Testimony

Plaintiff supplied varying reports about her own headaches. She reported at various times to her doctors that she had headaches constantly or almost daily. (*See, e.g.*, R. 486–89, 944.) At the hearing, she testified that she had frequent, but not daily severe headaches. (R. 86, 88–91.) She testified that the headaches would last multiple days at a time; that several times a month, the headaches became so bad that she could not hold a conversation; that two or three days a week, the headaches were severe enough that she could not do anything; that sometimes the headaches caused blackouts; and that she sometimes experienced fatigue, dizziness, or other symptoms related to her headaches. (*Id.*) Plaintiff testified that she had been, and still was, undergoing various treatments to manage her headaches, and that at different times, she experienced some success in treatment. (*See id.* at 88–89, 93.) Plaintiff said that she believed that some medicines caused side effects, including seizure-like symptoms and memory loss. (*Id.*)

### IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . "). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

Plaintiff raises one contention of error: that the ALJ did not provide good reasons for according less than controlling weight to the opinion of Plaintiff's treating physician. (Pl's Statement of Errors 7, ECF No. 15.)

An ALJ must consider all medical opinions that she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c).[4] Where a treating source's opinion is submitted, as here, the ALJ generally affords it deference "since these sources are likely to be the medical professionals most

---

[4] Plaintiff filed her application for benefits on July 7, 2016. (R. 271–77.) Accordingly, it is governed by the regulations cited here, which control claims filed prior to March 27, 2017.

7

able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not assign controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Further, an ALJ must "always give good reasons in [the] notice of determination or decision for the weight [the ALJ] give[s the] treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some

> reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors in the written decision. *See Tilley v. Comm'r of Soc. Sec.,* 394 F. App'x 216, 222 (6th Cir. 2010) (under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors in 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence in the written decision).

Finally, the Commissioner reserves the authority to decide certain issues, such as a claimant"s residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of [the claimant's] impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the ALJ accorded Dr. Fahey's opinion "partial weight" and offered the following detailed explanation:

> I have considered the opinion of Dr. Brian Fahey and I give his opinion partial weight. He found the claimant had one headache a week that typically lasted twenty-four hours. He indicated headaches were triggered by activity and vigorous exercise and made worse by moving around and activity. He indicated lying down, being in a quiet place, being in a dark room, and taking medication made her headaches better. He claimed that during a headache, she would be generally precluded from performing even basic work activities and need a break from the workplace. He indicated she could potentially be off task twenty-five percent of the day or more due to attention and concentration deficits preventing her from

9

> performing even simple work tasks. He indicated she would be absent from work more than four days per month. (Exhibit 24F). I accept his diagnosis of the claimant, except for memory loss, which was not supported by specific testing at the consultative examination, which showed scores generally in the average range or better. Additionally, I do not accept that during a headache the claimant could not work at all. This was partially shown by the fact that she was actually working part time as a bartender for a number of years despite her headaches. While the claimant complained of uncontrolled constant headache pain, when she saw Dr. Fahey, she was still conversational and in no distress. As noted by Dr. Goldstein's testimony, it would really depend on the magnitude of the claimant's headache pain, not only on whether or not someone had some degree of headache. As noted above, the file as a whole does not support the degree of pain she alleged or the frequency. I give no weight to Dr. Fahey's opinion that she would "potentially" be off task twenty-five percent or more. The fact that he modified the form with the term "potentially" indicated that he was not endorsing her condition would render her off task to that degree, but rather that it potentially could do so, presumably, if her headaches were uncontrolled. However, Dr. Fahey's own records showed normal examinations and indicated on multiple occasions that her symptoms were well or adequately controlled or substantially improved on medications. Similarly, his treatment records did not support a finding of being absent four or more days per month. Dr. Fahey did not explain that absenteeism nor does he document objective signs of findings to support this assertion.

(R. 32.)

The undersigned finds no error with the ALJ's consideration and assessment of Dr. Fahey's opinion.  The ALJ properly declined to afford the opinion controlling weight and articulated good reasons for assigning the opinion only "partial weight."  The ALJ reasonably rejected Dr. Fahey's extreme opinions that Plaintiff would be unable to work four days per month as unsupported by objected testing (in the case of the allegations of memory loss), Dr. Fahey's treatment notes (notwithstanding subjective complaints of uncontrolled pain, Plaintiff remained conversational and in no acute distress), and other record evidence undermining the severity of pain alleged (that Plaintiff continued to work for years despite headaches).  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (providing that a treating source opinion will be given controlling weight if and only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence

in [the] case record"). These obvious inconsistencies that the ALJ outlined in her discussion (and also elsewhere in her decision) provide substantial evidence in support of her decision to accord only partial weight to Dr. Fahey's opinion. Relevant to the ALJ's determination, the ALJ also noted that Plaintiff's own testimony regarding the intensity, persistence, and limiting effects of her headaches was not entirely consistent with the record evidence. (R. 21.) Finally, the ALJ assigned great weight to the opinion of Dr. Goldstein, finding that the medical record supported his conclusion that Plaintiff's headaches could be controlled with treatment, diminishing their disruption of her ability to work. (*See* R. 30–32; *see also* 989.) In light of this, the ALJ did not credit Dr. Fahey's opinion that Plaintiff's headaches could "potentially" put her off task for a quarter of her total work time, because the ALJ read the modifier "potentially" to refer to a scenario where Plaintiff's headaches were uncontrolled and correctly observed that Dr. Fahey's records reflected that Plaintiff experienced some success controlling headaches through treatment. (R. 32.)

Plaintiff reliance upon evidence in the record that she maintains could support Dr. Fahey's more extreme opinions is unavailing. Where "the record evidence could support two different conclusions . . . the law obligates the court to affirm the ALJ's decision, because the ALJ is permitted to decide which factual picture is most probably true." *Waddell v. Comm'r of Soc. Sec.*, No. 1:17-CV-01078, 2018 WL 2422035, at *10 (N.D. Ohio May 10, 2018), *report and recommendation adopted*, 2018 WL 2416232 (May 29, 2018); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

Because the ALJ provided good reasons supported by substantial evidence for assigning Ms. Forestal opinion only partial weight, the undersigned concludes that the ALJ did not violate the treating physician rule or otherwise err in the consideration and weighing of this opinion. It is therefore **RECOMMENDED** that Plaintiff's sole contention of error be **OVERRULED**.

## VI.  DISPOSITION

The undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, the undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's non-disability determination.

## VII.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE